# STATE OF MICHIGAN

# COURT OF APPEALS

In re N C B KROEGER-LOPEZ, Minor.

UNPUBLISHED
August 17, 2017

No. 337727
Kalamazoo Circuit Court
Family Division
LC No. 2015-000335-NA

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Respondent[1] appeals by right the trial court's order terminating his parental rights to the minor child under MCL 712A.19b(3)(a)(*ii*) (parent deserted child for 91 or more days and has not sought custody), (c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist and were not rectified), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if child returned to parent's home). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The minor child was the subject of a July 2015 petition seeking the removal of the child. Petitioner alleged that respondent had assaulted the child's mother on July 7, 2015, and would be incarcerated until the end of August 2015 for domestic violence and a parole violation. The petition further alleged that respondent used marijuana, had committed other acts of domestic violence against the child's mother in the past, and was on parole for armed robbery. The child was removed and placed in foster care. A Children's Protective Services (CPS) employee testified that she had spoken with respondent's parole officer to coordinate services upon his release from jail.

In September 2015, respondent entered a plea of admission to allegations in the petition. Respondent initially cooperated with respect to the services offered, including drug screens and supervised parenting time. When respondent's parole ended in October 2015, he was discharged from an anger-management class in which he had been participating through the Office of Community Corrections; it is unclear whether he failed to complete this class or simply was

---

[1] The child's mother is not a party to this appeal, although her parental rights were also terminated by the trial court's order.

forced to leave when his parole ended. Respondent began missing drug screens and testing positive for marijuana. Respondent never attended individual counseling and never completed domestic-violence classes. Respondent did not maintain contact with his caseworker. At a review hearing held in March 2016, respondent's caseworker testified that respondent was attending some parenting time visits, but that a "supportive visitation coach" assigned to respondent had been cancelled because of too many missed visitations; additionally, respondent continued to miss drug screens and remained difficult to contact.

In May 2016, respondent refused to sign a parent-agency agreement and signed a letter indicating that he wished to refuse all services offered by petitioner. According to his caseworker, respondent had not successfully completed any services before signing the letter. The caseworker recommended that the goal for the child be changed from reunification to adoption; however, the referee maintained the status quo for respondent after this hearing. After a review hearing in November 2016, in which the referee was apprised of respondent's continued lack of progress, the referee changed the goal for the minor child to adoption, ordered petitioner to file a termination petition, and suspended parenting time for respondent.

A termination hearing was held in March 2017; respondent did not attend. Respondent had not seen the child since October 2016, had not maintained contact with his caseworker, and had not even met the new caseworker who had been assigned to him in January 2017. Respondent's previous caseworker testified that he was unsure of respondent's current whereabouts and whether respondent even still resided in Michigan. He further testified that respondent had not seen his child for several months, had failed to complete any type of domestic-violence counseling and had failed to address concerns regarding employment and housing. The new caseworker testified that he had never met respondent and that his attempts to contact respondent had been unsuccessful; respondent was not receiving any benefits from the State of Michigan, none of the phone numbers he had provided were working, and respondent had never provided an address.

Following closing arguments, the trial court held that petitioner had met its burden of establishing statutory grounds for termination under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j). The trial court further held that termination of respondent's parental rights was in the child's best interests. This appeal followed.

## II. STANDARD OF REVIEW

Respondent's sole argument on appeal is that petitioner failed to make sufficient reunification efforts, thereby denying him due process. Because respondent failed to raise this issue below, it is unpreserved. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). This Court's review "is therefore limited to plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citation omitted).

III. ANALYSIS

Respondent does not challenge the adequacy of the services he received while on parole; instead, he argues that he was not provided meaningful services after he was discharged from parole. We disagree.

Generally, "when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). A trial court "is not required to order the agency to initiate proceedings to terminate parental rights if . . . [t]he state has not provided the child's family . . . with the services the state considers necessary for the child's safe return to his or her home, if reasonable efforts are required." MCL 712A.19a(8)(c). Although petitioner "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "Not only must respondent cooperate and participate in the services, [he] must benefit from them." *In re TK*, 306 Mich App at 711.

The record reflects that, after respondent was discharged from parole, petitioner engaged in reasonable efforts and provided respondent with services such as case management, parenting time, a psychological evaluation, bus passes, drug screening, a supportive visitation coach, an early intervention worker, and counseling services. Although some services were delayed by the need to obtain the results of respondent's psychological evaluation,[2] respondent failed to fully participate in services from the outset of the case. For example, respondent never consistently completed drug screens and missed over twenty of them. Respondent was removed from the supportive visitation program due to missed visits and frequent tardiness, and respondent failed to obtain individual counseling or complete a domestic-violence or anger-management class. The caseworker attempted to refer respondent to a domestic-violence class, but the caseworker was unable to contact respondent to obtain the required commitment. All of these efforts occurred after respondent was discharged from parole and before the March 2016 hearing.[3] After communicating with respondent at the March 2016 hearing, petitioner was able to refer respondent to domestic-violence classes. However, respondent stopped attending after only two sessions.

---

[2] Given respondent's overall poor participation as explained in further detail below, this delay does not rise to the level of plain error. Nonetheless we note that the record does not indicate that this delay was the fault of respondent; rather, it appears to be the type of temporary delay that occasionally arises in bureaucratic processes.

[3] Although respondent argues that the caseworker recommended at this hearing that the goal for the child be changed from reunification to adoption, it appears from the record that the recommendation was not made until May 2016, after respondent signed the letter refusing services; the goal was not actually changed until November 2016.

The parent-agency agreement indicated that respondent also was to attend an informational meeting at Housing Resources Inc. (HRI) and apply for housing assistance with HRI. Moreover, the case service plan indicated that respondent was to follow up with HRI and that respondent had agreed to contact Michigan Works and temporary employment agencies to obtain employment. Eventually, however, respondent signed the letter indicating that he was refusing to participate in all services offered by petitioner.[4]

Respondent sporadically reengaged with services in August 2016, but failed to benefit from those services. He continued to miss numerous drug screens and was again dropped from the domestic-violence class. He also failed to maintain contact with the caseworker. In sum, the record reveals that it was respondent's failure to communicate with the caseworker and his unwillingness to meaningfully engage in services—rather than any inadequacy of petitioner's reunification efforts—that hindered respondent's ability to succeed in this case. See *id*. (explaining that the respondent must participate in and benefit from the services); *In re Frey*, 297 Mich App at 248 (explaining that a respondent has the responsibility to participate in the services offered). Respondent has not established plain error with respect to the reasonableness of the reunification efforts. *In re VanDalen*, 293 Mich App at 135.

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

---

[4] Respondent argues that this letter was signed out of court and that there is no way to know whether the letter was voluntarily signed. However, these arguments are of no significance. This letter was not a release of his parental rights, a plea to statutory grounds, or anything of that nature; it was merely an expression that he was refusing to participate in services. The letter was consistent with respondent's earlier actions, given that he had refused to sign the parent-agency treatment plan and had subsequently stopped participating in services for several months. Even apart from this letter, respondent's actions demonstrate a failure to participate in services. Moreover, respondent's argument on appeal fails to acknowledge that he was offered—and failed to participate in— numerous services before signing the letter.